IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
1:21-cv-00256-MR-WCM

| | |
|---|---|
| ERIC GILES, ) | |
| ) | |
| Plaintiff, ) | |
| ) | MEMORANDUM AND |
| v. ) | RECOMMENDATION |
| ) | |
| JOHN STEPHEN ) | |
| HINDSMAN, JR., ) | |
| *Individually and in his capacity* ) | |
| *as Assistant District Attorney* ) | |
| *for the Thirtieth Judicial District* ) | |
| *(now Judicial District 43),* ) | |
| **ASHLEY WELCH,** ) | |
| *Individually and in her capacity* ) | |
| *as District Attorney for the* ) | |
| *Thirtieth Judicial District* ) | |
| *(now Judicial District 43)* ) | |
| ) | |
| **Defendants.** ) | |
| _____ ) | |

This matter is before the court on Defendant's Motion to Dismiss (Doc. 5), which has been referred to the undersigned pursuant to 28 U.S.C. § 636 for the entry of a recommendation.

I. Relevant Background

A. Procedural History

On August 27, 2021, Plaintiff Eric Giles ("Plaintiff") filed a Complaint in the Superior Court of Clay County, North Carolina. Doc. 1-1. Plaintiff's Complaint named John Stephen Hindsman, Jr., "individually and in his

1

capacity as Assistant District Attorney for the Thirtieth Judicial District (now Judicial District 43)" ("Hindsman") and Ashley Welch, "individually and in her capacity as District Attorney for the Thirtieth Judicial District (now Judicial District 43)" ("Welch") as defendants and alleged violations of his federal constitutional rights pursuant to 42 U.S.C. § 1983.

On September 27, 2021, Hindsman and Welch (collectively, "Defendants") removed the case to this court. Doc. 1.

On October 4, 2021, Defendants filed the instant Motion to Dismiss along with a supporting memorandum. Docs. 5, 6. Plaintiff has responded, and Defendants have replied. Docs. 7, 8.

### B. Plaintiff's Allegations

Plaintiff has been employed by the Sheriff's Departments in Macon, Graham, Clay, and Cherokee Counties as a "certified law enforcement officer and/or as a Jailer." Doc. 1-1 at ¶10.

During 2018, Plaintiff was employed as a Deputy Sheriff with Cherokee County. Id. at ¶11. That year, Plaintiff, a Democrat, filed to run for Sheriff of Macon County, North Carolina against the incumbent Sheriff, Robbie Holland, who is a Republican. Id. at ¶12. Plaintiff alleges that Welch "is a Republican and was a vocal supporter of Robbie Holland as a candidate for Sheriff…during the 2018 election." Id. at ¶23.

2

In March of 2018, Plaintiff attended a "Sheriff's candidate forum," during which he stated that he had been a member of the Cherokee County drug task force. Id. at ¶¶13-14. This was a misstatement because Plaintiff had actually been a member of the drug task force in Graham County. Id. at ¶15.

On May 9, 2018, Brittany Lofthouse, a reporter for the Macon County News and Shopping Guide, accused Plaintiff on social media of lying about being on the drug task force in Cherokee County and about being a victim advocate for Clay County. Id. at ¶¶13, 16-17. Plaintiff alleges that later the same day, he posted a response acknowledging that he had misspoken regarding being on the drug task force in Cherokee County and that he also posted a letter verifying that he had been the victim witness coordinator for the Clay County Sheriff's Department. Id. at ¶18. Thereafter, Ms. Lofthouse "circulated untruthful rumors about [Plaintiff] having affairs with young women when he worked in Graham County and in Clay County." Id. at ¶20. Plaintiff alleges that Ms. Lofthouse's husband was employed by Sheriff Holland, Plaintiff's opponent in the 2018 election. Doc. 1-1 at ¶22.

On August 28, 2018, Hindsman sent two letters, one to Plaintiff and one to Plaintiff's supervisor, the Sheriff of Cherokee County, Derrick Palmer, citing

Giglio v. Unites States, 405 U.S. 150 (1972). Id. at ¶¶32-35 (the "Giglio Letters").[1] The Giglio Letter sent to Sheriff Palmer advised that:

> In compliance with our procedures, prosecutors in our office recently reviewed materials and information in our possession regarding substantial violations by Deputy Giles. Unfortunately, a review of these materials and information revealed that he has on more than one occasion misrepresented his duties as a law enforcement officer in his employment with both the Clay and Cherokee County Sheriff's Office in public forums. I am disheartened to inform you that Deputy Giles's ethical and moral breaches have caused us to conclude that the District Attorney's Office for the 30th Prosecutorial District will no longer be able to use him as a witness for the State of North Carolina in any criminal or traffic case. The burden of the State having to disclose his breaches each time he is called as a State witness and then attempting to rehabilitate him in front of a judge and/or jury is simply insurmountable. Our staff will be reviewing all pending cases in which he is a witness to determine whether he is an essential witness in those cases.

Doc. 1-1 at 26.[2]

Plaintiff contends that the Giglio Letters were sent by Hindsman "at the direction of and/or with the express approval" of Welch, who was Hindsman's "supervisor and superior," and that the Letters were sent for the improper

---

[1] Plaintiff has attached and incorporated both Giglio Letters into his Complaint. Doc. 1-1 at ¶¶ 33 & 35; Doc. 1-1 at 24-25 & 26-27.

[2] The Giglio Letter that Hindsman sent directly to Plaintiff appears to be substantively similar. Doc. 1-1 at 24.

purpose of influencing the outcome of the Macon County Sheriff's race and helping Sheriff Holland win reelection. Id. at ¶¶39-43.

Thereafter, Plaintiff was suspended with pay from the Cherokee County Sheriff's Department while the Department conducted its own investigation of the allegations contained in the Giglio Letters. The Department found "no wrongdoing on the part of" Plaintiff and he was put back on patrol duty. Id. at ¶¶45-47.

On February 2, 2019, while on patrol, Plaintiff came upon an automobile accident within the city limits of the Town of Murphy, North Carolina. Id. at ¶48. Plaintiff noticed that the driver of the automobile smelled of alcohol and was unsteady, and therefore Plaintiff contacted Officer Brandon Morgan of the Murphy Police Department. Id. at ¶49. After forming "his own independent opinion" regarding the driver's impairment, Officer Morgan sought a warrant on the driver before Cherokee County Magistrate Cliff Owl. Id. at ¶50-53. Magistrate Owl, however, declined to find probable cause to issue the warrant because Plaintiff "was involved and the Magistrate had been told 'not to accept any charges involving the Plaintiff…due to the 'Giglio Order''" Id. at ¶53.

Later, Plaintiff was "involuntarily transferred from patrol duty to bailiff duty at the Cherokee County Courthouse." Id. at ¶55. "Several months" after that, Plaintiff was informed that he could either transfer to the Cherokee County Detention Center (the "Detention Center") to work as a jailer or be

5

Case 1:21-cv-00256-MR-WCM   Document 9   Filed 04/14/22   Page 5 of 20

terminated from employment with the Cherokee County Sheriff's Department. Id. at ¶56. Plaintiff was transferred to the Detention Center but resigned his position as a detention officer several weeks later. Id. at ¶¶57-58.

Plaintiff contends that he was transferred to the Detention Center as a direct result of the Giglio Letter that was sent to his employer (Sheriff Palmer) and that he can no longer obtain employment as a law enforcement officer in North Carolina due to the Giglio Letters. Id. at ¶¶59-60. Plaintiff further contends that Defendants conducted "little or no investigation" prior to sending the Giglio Letters, that he was given no meaningful opportunity to be heard prior to the dissemination of the Giglio Letters, that the reason cited for his disqualification was invalid, and that other officers who have received "oral 'Giglios'" have been used as witnesses in criminal cases. Id. at ¶¶61-69.

## II. Legal Standard

When considering a motion made pursuant to Rule 12(b)(6), the court, accepting the allegations in the complaint as true and construing them in the light most favorable to the plaintiff, determines "whether the complaint on its face states plausible claims upon which relief can be granted." Francis v. Giacomelli, 588 F.3d 186, 189, 192 (4th Cir. 2009); accord Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc., 591 F.3d 250, 253 (4th Cir. 2009).

The court, however, is not required to accept "legal conclusions, elements of a cause of action, and bare assertions devoid of further factual

6

enhancement." Consumeraffairs.com, 591 F.3d at 255; see Giacomelli, 588 F.3d at 192. That is, while "detailed factual allegations" are not required, the complaint must contain "enough facts to state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007); accord Consumeraffairs.com, 591 F.3d at 255. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); accord Consumeraffairs.com, 591 F.3d at 255. In short, the well-pled factual allegations must move a plaintiff's claim from conceivable to plausible. Twombly, 550 U.S. at 570; Consumeraffairs.com, 591 F.3d at 256.

The question of absolute immunity may be appropriately considered on a motion to dismiss pursuant to Rule 12(b)(6) "where the issue presented is purely a legal determination based on the facts alleged in the complaint." Hyatt v. Town of Lake Lure, 225 F.Supp.2d 647, 656 (W.D.N.C. 2002) (citing Barnes v. Winchell, 105 F.3d 1111, 1114-16 (6th Cir. 1997) (reviewing a ruling of a district court on a motion to dismiss based on absolute judicial immunity)); see also Savage v. Maryland, 896 F.3d 260, 268 (4th Cir. 2018) (analyzing claim for absolute prosecutorial immunity pursuant to standard governing motions to dismiss).

7

III. Discussion

Plaintiff asserts claims pursuant to 42 U.S.C. § 1983 for violations of his due process, equal protection, and First Amendment rights under the United States Constitution. Id. at ¶¶75-78. He seeks a "permanent injunction mandating that the Defendants rescind" and nullify the Giglio Letters, as well as a judgment against the Defendants, in their individual capacities, awarding him compensatory and punitive damages. Id. at 17-18.

By the Motion to Dismiss, Defendants assert that the claims against them in their individual capacities should be dismissed based on absolute prosecutorial immunity. With respect to Plaintiff's claim for injunctive relief, Defendants contend that Plaintiff has failed to state a claim.

### A. Absolute Prosecutorial Immunity

Absolute immunity protects prosecutors from liability for damages "when they act as advocates for the State." Savage, 896 F.3d at 268 (citing Imbler v. Pachtman, 424 U.S, 409, 430-32 (1976)). This immunity "rests on an 'important public policy' justification," specifically, that "'the public trust of the prosecutor's office would suffer' were the prosecutor to have in mind his 'own potential damages liability' when making prosecutorial decisions – as he might well were he subject to § 1983 liability." Savage, 896 F.3d at 268 (quoting Carter v. Burch, 34 F.3d 257, 261 (4th Cir. 1994) & Van de Kamp v. Goldstein, 555 U.S. 335, 341-42 (2009) (quoting Imbler, 424 U.S. at 424)).

Prosecutorial immunity "safeguards the process, not the person," and therefore applies only to conduct that is "'intimately associated with the judicial phase of the criminal process.'" Nero v. Mosby, 890 F.3d 106, 117-18 (4th Cir. 2018) (quoting Imbler, 424 U.S. at 430-31). Whether this immunity applies is based on the nature of the function performed rather than the identity of the performer, the harm the conduct may have caused, or the question of whether the conduct was lawful. Savage, 896 F.3d at 268 (citing Nero, 890 F.3d at 118; Buckley v. Fitzsimmons, 509 U.S. 259, 271 (1993)).

"When a prosecutor is functioning as an advocate for the State, it is clear that his or her actions are 'intimately associated with the judicial phase of the criminal process' and thus protected by absolute immunity. The [Supreme] Court has distinguished those advocacy functions from administrative or investigative functions that a prosecutor also may perform, and to which absolute immunity may not extend." Savage, 896 F.3d at 268 (quoting Imbler, 424 U.S. at 430-31 and citing Van de Kamp, 555 U.S. at 342); see also Nero, 890 F.3d at 117-118 ("All others actions are entitled only to qualified immunity"). "The burden is on the prosecutor claiming immunity to show that the acts in question are 'directly connected' with the judicial process, justifying the protections of absolute immunity." Savage, 896 F.3d at 268.

In Savage, the plaintiff, who was a former Pocomoke City, Maryland police officer, alleged that after he had complained of a hostile work

environment, the State's Attorney for the county, Beau Oglesby, retaliated against him by refusing to call him as a witness in criminal cases and notifying Pocomoke City officials of that decision. 896 F.3d at 265. Specifically, Plaintiff asserted that Oglesby sent a letter to the Pocomoke City Mayor and City Council "implying that he would not allow Officer Savage to testify in court' because of concerns about his 'veracity'" and also had a telephone conversation with the Pocomoke City Manager in which he "was adamant that Officer Savage would never be able to testify again" and should be terminated, and that as a result of those actions, he was unable to perform critical job duties. Id. at 266.

In considering the question of absolute immunity, the Fourth Circuit explained that:

> Decisions regarding witness testimony—which witnesses to call, whether potential witnesses are credible, and how to proceed in the face of credibility questions—are a core prosecutorial function, directly tied to the conduct of a criminal trial. This is clear from Imbler itself, holding that prosecutors are absolutely immune from claims that they knowingly presented false testimony at trial: Because "[t]he veracity of witnesses in criminal cases frequently is subject to doubt," the [Supreme] Court explained, the integrity of the criminal process would suffer if "prosecutors were hampered in exercising their judgment as to the use of such witnesses by concern about resulting personal liability." Imbler, 424 U.S. at 426, 96 S.Ct. 984. Instead, decisions about "which witnesses to call" are among the "sensitive issues" that prosecutors must address in their capacity as advocates as they prepare

> for trial, fully shielded by immunity. Id. at 430 n.33, 96 S.Ct. 984.
>
> That is especially so when, as here, assessments of witness credibility are tightly intertwined with determinations about which cases to charge. The alleged decision to which Savage objects is not only that Savage would not be called as a witness; it is also that Oglesby would dismiss instead of prosecuting cases in which Savage's account could not be corroborated. See J.A. 187 ("If we are unable to independently corroborate [Savage's] testimony and therefore must rely solely on his word, the likely outcome will be a dismissal of the case."). And whether to "initiat[e] a prosecution," of course, is in the heartland of the prosecutorial discretion covered by absolute immunity. See Burns v. Reed, 500 U.S. 478, 486, 111 S.Ct. 1934, 114 L.Ed.2d 547 (1991) (quoting Imbler, 424 U.S. at 431, 96 S.Ct. 984).

896 F.3d at 270.

The Savage court went on to agree with other cases "reaching the same conclusion," id. (citing Harrington v. Almy, 977 F.2d 37, 42 (1st Cir. 1992) (absolute immunity applies to prosecutor's decision not to charge cases initiated by particular officer); Barnett v. Marquis, 16 F.Supp.3d 1218, 1222–23 (D. Or. 2014), aff'd, 662 F. App'x 537 (9th Cir. 2016) (absolute immunity applies to prosecutor's decision not to use police officer as witness based on credibility concerns); Neri v. Cty. of Stanislaus Dist. Attorney's Office, No. 1:10-CV-823-AWI-GSA, 2010 WL 3582575, at *8 (E.D. Cal. Sept. 9, 2010) (absolute immunity applies to prosecutor's decision to "Brady-list" officer, i.e., refuse to use him as trial witness based on credibility concerns), and noted that

11

immunity in such cases existed despite "predictably negative employment repercussions" or an allegation that "the prosecutor's decision in fact was driven by retaliatory or malicious motives." Id. Accordingly, the Savage court found that Oglesby was entitled to absolute prosecutorial immunity from damages liability, regardless of whether his communications with City officials about plaintiff's status could arguably be categorized as "administrative" or "managerial," because such communications remained "inextricably linked with the underlying assessment of Savage's credibility and discretionary judgment about how best to respond." Id. at 273.

Here, Defendants rely primarily on Savage, 896 F.3d 260, when asserting that they are entitled to absolute prosecutorial immunity. See Doc. 6 at 13-16. In his response, Plaintiff does not address Savage, and instead argues that "Defendants actions were investigatory in nature and went far beyond the strictly prosecutorial actions that are afforded absolute immunity." Doc. 7-1 at 5. Plaintiff further asserts that other courts have "found against granting a prosecutor absolute immunity for the mailing of a Giglio letter to an officer's employer." Id. at 6 (citing Stockdale v. Helper, 979 F.3d 498 (6th Cir. 2020); Krile v. Lawyer, 2020 ND 176, 947 N.W.2d 366 (N.D. 2020); Beck v. Phillips, 685 N.W.2d 637 (Iowa 2004)).

Plaintiff's allegations are substantially similar to those considered in Savage, and the undersigned is persuaded that the result reached by the

12

Fourth Circuit in that case should control here. Accordingly, the undersigned will recommend that Defendants' Motion to Dismiss based on absolute prosecutorial immunity be granted, and that Plaintiff's claims for monetary damages be dismissed.

### B. Failure to State a Claim for Injunctive Relief

Additionally, Defendants contend that Plaintiff has failed to state a claim for a violation of Plaintiff's due process, equal protection, or First Amendment rights, and therefore Plaintiff's request for an injunction requiring Defendants to rescind and nullify the Giglio Letters should be dismissed. See Doc. 6 at 19-20 (acknowledging that under 42 U.S.C. § 1983, a plaintiff may bring an action against a state official in their official and individual capacities for prospective injunctive relief but asserting that Plaintiff cannot establish that a constitutionally protected right was violated).

#### 1. Due Process

The Complaint does not specify whether Plaintiff is asserting a violation of his procedural or substantive due process rights. However, it appears that Plaintiff takes issue with the process by which the Giglio Letters were issued and alleges that the issuance of the Letters resulted in his eventual resignation as a law enforcement officer. See Doc. 1-1 at ¶61 (alleging Defendants conducted "little to no investigation" prior to issuance of the Letters); ¶62 (alleging Plaintiff was given "no hearing or opportunity to be heard" regarding

13

the Giglio Letters); ¶66 (alleging there were no "uniform procedures" in place regarding the issuance of Giglio letters). The undersigned will therefore assume Plaintiff is asserting a procedural due process claim.

To state a procedural due process claim, Plaintiff must present sufficient factual allegations concerning: "(1) a cognizable 'liberty' or 'property' interest; (2) the deprivation of that interest by 'some form of state action'; and (3) that the procedures employed were constitutionally inadequate." Iota Xi Chapter of Sigma Chi Fraternity v. Patterson, 566 F.3d 138, 145-46 (4th Cir. 2009) (citing Stone v. Univ. of Md. Med. Syst. Corp., 855 F.2d 167, 172 (4th Cir. 1988)).

Here, Plaintiff has alleged that he has been deprived of the ability to work as a certified law enforcement officer in North Carolina. See Doc. 1-1 at ¶78. However, "[t]he question of whether a sheriff's deputy has a property interest in continued employment has been definitively answered" in the negative. Burns v. Brinkley, 933 F.Supp. 528, 533 (E.D.N.C. Aug. 1, 1996) (citing N.C.Gen.Stat. § 153A-103(1) & (2); Peele v. Provident Mut. Life. Ins. Co., 90 N.C.App. 447, 451 (1988) (Deputy Sheriffs enjoy no property right in continued employment); Joyner v. Lancaster, 553 F.Supp. 809, 816 (M.D.N.C.1982), aff'd, 815 F.2d 20 (4th Cir. 1987) ("Under state law the sheriff has the exclusive right to fire any deputy in his office. Deputies work at the pleasure of the sheriff.") (citation omitted)).

Because Plaintiff has failed to allege the deprivation of a protected property right, the undersigned will recommend dismissal of Plaintiff's due process claim.[3]

### 2. Equal Protection

Defendants assert that Plaintiff's equal protection claim should be dismissed for failure to state a claim on the same basis. See Doc. 6 at 21 ("Since Plaintiff does not have a property interest in continued public employment as a deputy sheriff, his Section 1983 due process and equal protection claims should be dismissed"). However, they provide no argument specific to the elements of an equal protection claim. See Cent. Radio Co. Inc. v. City of Norfolk, Va, 811 F.3d 625, 635 (4th Cir. 2016) (To state a claim for an equal protection violation, a plaintiff must allege that similarly-situated individuals were treated differently and there was clear and intentional discrimination).

The undersigned will therefore recommend that Defendants' Motion to Dismiss the equal protection claim be denied.

### 3. First Amendment

Finally, Defendants assert that Plaintiff's Complaint fails to state a claim for "First Amendment retaliation." Doc. 6 at 21-24.

---

[3] Even if Plaintiff's due process claim is interpreted as being a substantive due process claim, Plaintiff would still need to show that he was deprived of a liberty or property interest. See Safety-Kleen, Inc. (Pinewood) v. Wyche, 274 F.3d 846, 862 (4th Cir. 2001).

15

"The First Amendment right of free speech includes not only the affirmative right to speak, but also the right to be free from retaliation by a public official for the exercise of that right." Suarez Corp. Indus. v. McGraw, 202 F.3d 676, 685 (4th Cir. 2000). "A plaintiff seeking to recover for First Amendment retaliation must allege that (1) [he] engaged in protected First Amendment activity, (2) the defendants took some action that adversely affected [his] First Amendment rights, and (3) there was a causal relationship between [his] protected activity and the defendants' conduct." Constantine v. Rectors and Visitors of George Mason University, 411 F.3d 474, 499 (4th Cir. 2005).

In this case, Defendants argue that Plaintiff has failed to allege a causal connection between his participation in the March 2018 candidate forum or his posts on social media concerning his duties as a law enforcement officer and the issuance of the Giglio Letters. Doc. 6 at 22. Specifically, Defendants assert that Plaintiff's own admission that he "misspoke" at the candidate forum "severs the causal connection between Defendants alleged retaliatory action and his alleged speech," that the text of each Letter specifies that it was issued based on the burden of "rehabilitating" Plaintiff's credibility each time he was called to testify, and that the five-month period between Plaintiff's speech and the issuance of the Letters indicates a lack of causal connection. Id. at 22-24.

In response, Plaintiff asserts that he has properly pled a "causal connection between the Plaintiff's protected speech and the Giglio Letters." Doc. 7-1 at 8; see also id. (asserting that "Defendants issued the 'Giglio' letter in retaliation against the Plaintiff…to punish him for speaking out and as political retribution against him for his campaign against Sheriff Robbie Holland….").[4]

As noted, Plaintiff has alleged that he participated in a "candidate forum" in March of 2018 as a candidate for the position of Sheriff of Macon County. Doc. 1-1 at ¶¶12-15. He has also alleged that Welch was a vocal supporter of the incumbent sheriff, Sheriff Holland, and that the Giglio Letters were sent at Welch's direction and/or with her express approval. Id. at ¶¶23-25; 39. Finally, Plaintiff has alleged that the Letters were sent "to influence the outcome of the Sheriff's race in Macon County, North Carolina in 2018 and to help Sheriff Robbie Holland in his re-election campaign." Id. at ¶41.

Although Plaintiff's allegations could be more factually robust, Plaintiff is not relying solely on the temporal proximity between his speech and the

---

[4] In their Reply, Defendants contend that Plaintiff is improperly adding allegations regarding "political retribution" through his briefing. Doc. 8 at 8. The undersigned does not read Plaintiff's response to the Motion to Dismiss in this way and, in any event, has considered only the factual allegations as set out in Plaintiff's Complaint.

17

alleged retaliation to show a causal connection.[5] Further, while Defendants argue that there is a lack of causal connection because Plaintiff acknowledges misspeaking at the candidate forum and further because the Giglio Letters describe, in Defendants' view, why they were issued, resolution of any such factual issues is more appropriate at a later stage of these proceedings. See Goldstein v. Chestnut Ridge Volunteer Fire Co., 218 F.3d 337, 352 (4th Cir. 2000) (with respect to a First Amendment claim, causation is a question of "fact, and as such, it will serve as a basis for summary judgment only in those instances when there are no causal facts in dispute"); Love-Lane v. Martin, 355 F.3d 766, 776 (4th Cir. 2004) (same).

---

[5] Defendants argue that the five-month period between Plaintiff's allegedly protected speech and the issuance of the Giglio Letters is simply too long. Doc. 6 at 23. In support of that position, Defendants rely on Reardon v. Herring, 191 F.Supp.3d 529 (E.D. Va. 2016). In Reardon, the district court dismissed Plaintiff's claim of retaliation under the Equal Pay Act without prejudice for failure to sufficiently allege that her termination was causally connected to her protected activity. There, however, the court explained that '[w]here causation is based on temporal proximity alone, the retaliatory action must be 'very close' in time to the protected activity to support a prima facie case" but that "even in the face of a lengthy passage of time, other evidence of retaliation may suffice to show a causal connection." 191 F.Supp.3d at 551-552 (citations omitted).

## IV. Recommendation

For the reasons set forth herein, the undersigned respectfully **RECOMMENDS** that Defendants' Motion to Dismiss (Doc. 5) be **GRANTED IN PART** and **DENIED IN PART** as follows:

1. That Defendants' motion be **GRANTED**, and the following claims be **DISMISSED**:

    a. Plaintiff's claims for monetary damages; and

    b. Plaintiff's claim for injunctive relief based on violation of his due process rights.

2. That Defendants' motion be **DENIED** as to Plaintiff's claim for injunctive relief based on violation of his equal protection and First Amendment rights.

Signed: April 14, 2022

W. Carleton Metcalf
United States Magistrate Judge

## Time for Objections

The parties are hereby advised that, pursuant to Title 28, United States Code, Section 636, and Federal Rule of Civil Procedure 72(b)(2), written objections to the findings of fact, conclusions of law, and recommendation contained herein must be filed within **fourteen (14)** days of service of same. **Responses to the objections must be filed within fourteen (14) days of service of the objections.** Failure to file objections to this Memorandum and Recommendation with the presiding District Judge will preclude the parties from raising such objections on appeal. See Thomas v. Arn, 474 U.S. 140, 140 (1985); United States v. Schronce, 727 F.2d 91, 94 (4th Cir. 1984).